**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| NEW WORLD INTERNATIONAL, INC., | § | |
| and NATIONAL AUTO PARTS, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | NO. 3:16-CV-1112-M |
| | § | |
| FORD GLOBAL TECHNOLOGIES, LLC, | § | |
| and FORD MOTOR COMPANY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss of Defendant Ford Global Technologies, LLC

("FGTL") for Res Judicata on Lack of Personal Jurisdiction and Improper Venue and Motion for

Sanctions (the "First Motion to Dismiss") [ECF No. 11], Plaintiffs' Amended Complaint [ECF

No. 34], the Motion to Dismiss of Defendants FGTL and Ford Motor Company ("FMC") (the

"Second Motion to Dismiss") [ECF No. 47], Plaintiffs' Motion for Jurisdictional Discovery

[ECF No. 59], and the parties' Notices regarding whether the Court needs to make determination

of both Motions to Dismiss [ECF Nos. 63, 64].  For the following reasons, the First Motion to

Dismiss is **DENIED** as moot, except with respect to arguments incorporated by reference in the

Second Motion to Dismiss, the Second Motion to Dismiss is **GRANTED**, and Plaintiffs' Motion

for Jurisdictional Discovery is **DENIED**.

## 1. PROCEDURAL BACKGROUND

This declaratory judgment action is brought by New World International, Inc. ("NWI")

and National Auto Parts, Inc. ("NAP") against FGTL and FMC.  Of significance to this case is

an earlier action, filed in this Court on April 14, 2015, and styled *New World International Inc.*

*and National Auto Parts, Inc. v. Ford Global Technologies, LLC*, Case No. 3:15-cv-1121 (the

"2015 Action").  In the 2015 Action, NWI and NAP sought a declaratory judgment of invalidity

and unenforceability of U.S. Design Patent No. D489,299 ("the '299 patent") and U.S. Design

Patent No. D501,685 ("the '685 patent").  The defendant in the 2015 Action was FGTL, which

claimed that automotive parts sold by NWI and NAP were the subject of design patents assigned

to FGTL.  On March 16, 2016, the Court, on FGTL's motion, dismissed the 2015 Action and

held that the Court lacked personal jurisdiction over FGTL.  *New World Int'l, Inc. v. Ford*

*Global Techs., LLC*, No. 3:15-cv-01121, 2016 WL 1069675, at *1 (N.D. Tex. Mar. 16, 2016)

(Lynn, J.).  The Court also denied leave to amend the complaint on the grounds that NWI and

NAP had been given ample opportunities to plead facts indicative of personal jurisdiction, but

had not done so.  NWI and NAP are currently appealing the Court's ruling to the Federal Circuit.

*See New World Int'l, Inc. v. Ford Global Techs., LLC*, No. 16-2097 (Fed. Cir. Apr. 14, 2016).

On April 25, 2016, NAP and NWI filed the Complaint in this case, again seeking a

declaratory judgment against FGTL of invalidity and unenforceability of the '299 and '685

patents.  Compl. [ECF No. 1] ¶¶ 23–27 .  Plaintiffs' Complaint in this case was almost identical

to the proposed amended complaint NWI and NAP had asked the Court for leave to file in the

2015 Action and asserted no new factual allegations.  *See* App. to 1st Mot. [ECF No. 13-1] at

40–47.  The Complaint did not reference the Court's earlier Order dismissing the 2015 Action

for want of personal jurisdiction, and instead repeated the same jurisdictional assertions that this

Court had previously held insufficient.  *See* Compl. ¶ 6.

On May 24, 2016, FGTL filed its Motion to Dismiss, or Alternatively to Transfer for Res

Judicata, Lack of Personal Jurisdiction and Improper Venue, and Motion for Sanctions, arguing

that res judicata bars the current action.  In addition, FGTL moved for a sanctions, in the form of

2

attorneys fees and costs, against NAP and NWI for unnecessarily multiplying proceedings. Def.'s 1st Mot. at 25.  On June 14, 2016, NWI and NAP filed the First Amended Complaint, adding FMC as a Defendant, and seeking to invalidate three additional asserted patents that had been assigned to FGTL: U.S. Patents Nos. D492,801, D489,658, and D607,785 ("the '801 patent," "the '658 patent," and "the '785 patent," respectively).  Am. Compl. at 15–16.  On July 19, 2016, FGTL and FMC filed a Motion to Dismiss for Res Judicata, Lack of Personal Jurisdiction, Lack of Standing/Subject Matter Jurisdiction and Improper Venue, under Federal Rules of Civil Procedure 12 and 19 (the "Second Motion to Dismiss"), in which FGTL renewed its arguments to dismiss or transfer the case.  On August 24, 2016, NWI and NAP filed a Motion for Jurisdictional Discovery.

## 2. FACTUAL BACKGROUND

The Court adopts its summary of the factual background of this case from its Order dismissing NWI and NAP's claims in the 2015 Action:

> The Defendant, Ford Global Technologies, LLC ("FGTL"), claims that automotive parts sold by the Plaintiffs are the subject of design patents. The Plaintiffs, who seek a declaratory judgment of invalidity, unenforceability, and non-infringement, are New World International, Inc. ("NWI") and National Auto Parts, Inc. ("NAP")—two automotive parts sellers located in Irving, Texas.
> FGTL is incorporated in Delaware and headquartered in Michigan. It owns, manages, and licenses intellectual property. According to the Declaration of Damian Porcari, FGTL does not do any business in Texas nor have any employees or offices in Texas.  It is a subsidiary of Ford Motor Company ("[FMC]"), also a Delaware company headquartered in Michigan.  The Porcari Declaration states that FGTL does not make or sell automobiles or automotive products.  FGTL licenses patents to [FMC] and LKQ Corporation ("LKQ"), a Delaware company headquartered in Illinois.  [FMC] and LKQ do business in all fifty states.  FGTL's relationship with LKQ arose out of earlier patent litigation. As part of a settlement, LKQ was granted a license by FGTL, giving LKQ a right to import and sell aftermarket products covered by the patents which are the subject of the Plaintiffs' declaratory judgment action ("the License").
> The License does "not prohibit FGTL and Ford . . . from making, having made, importing, exporting, selling, offering for sale[,] distributing or licensing any products anywhere in the world that are branded, endorsed, manufactured or made

by a Ford Associated Company," but it is "otherwise . . . exclusive" to LKQ. It includes several provisions relating to litigation on the patents subject thereto.

The License makes clear that LKQ "has no right, title or interest in or to the FGTL Design Patents," and that LKQ has no "right to grant sublicenses." The License states that each party is "an independent contractor in the performance of each and every part of the license," and that "neither party has the power or authority to act as agent, employee or in any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever." The License states that LKQ may not use FMC's or FGTL's trademarks. It also requires LKQ to identify its products as "Non Original Equipment Aftermarket Part[s]."

From at least September, 2011, to November, 2013, FGTL sent various communications to NWI, including cease and desist letters, in which it accused NWI of infringing FGTL's patents, and threatened to initiate litigation. For example, in May of 2013, FGTL wrote NWI, advising that to prevent legal action against it, NWI had to "agree to refrain from importing or selling parts covered by Ford design patents." That letter, copied to LKQ, also stated that "LKQ Corporation may be able to assist you in the disposal of your existing inventory." LKQ then contacted NWI, asking it to provide details regarding its inventory in order to "determine the most prudent disposal method."

*New World Int'l, Inc. v. Ford Global Techs., LLC*, No. 3:15-cv-01121, 2016 WL 1069675, at *1 (N.D. Tex. Mar. 16, 2016) (Lynn, J.).

As of the outset of this case, four of the five patents in suit in this case had been assigned to FGTL. App. to 2d Mot. [ECF No. 49] at 78–87. FMC assigned the '785 patent to FGTL on July 14, 2016, after the Amended Complaint was filed. *Id.* at 78.

### 3. LEGAL STANDARD

#### a. Res Judicata

Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *In re Paige*, 610 F.3d 865, 870 (5th Cir. 2010) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "[A]t a

minimum, . . . courts [are] not required to adjudicate, nor defendants to address, successive

actions arising out of the same transaction, asserting breach of the same duty." *Nilsen v. City of*

*Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983).

 Res judicata applies where "(1) the parties to both actions are identical (or at least in

privity); (2) the judgment in the first action is rendered by a court of competent jurisdiction; (3)

the first action concluded with a final judgment on the merits; and (4) the same claim or cause of

action is involved in both suits." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000).

To determine whether two suits involve the same claim under the fourth element, the critical

issue is whether the two actions under consideration are based on "the same nucleus of operative

facts." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999); *see also Procter & Gamble*

*Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004) ("If these [four] conditions are satisfied,

all claims or defenses arising from a 'common nucleus of operative facts' are merged or

extinguished."). When res judicata applies, it "prohibits either party from raising any claim or

defense in the later action that was or could have been raised in support of or in opposition to the

cause of action asserted in the prior action." *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d

318, 327 n.28 (5th Cir. 2006) (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th

Cir.1994)). When considering whether res judicata applies, a judgment is treated as final even if

it is on appeal. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1380–81 (Fed.

Cir. 1999); *Praer v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969).

 "Although a jurisdictional ruling is technically not an adjudication on the merits, '[i]t has

long been the rule that principles of res judicata apply to jurisdictional determinations—both

subject matter and personal.'" *Comer v. Murphy Oil USC, Inc.*, 718 F.3d 460, 469 (5th Cir.

2013) (internal quotation marks removed); *see Ins. Corp. of Ire., Ltd. v. Compagnie des Bauxites*

*de Guinee*, 456 U.S. 694, 703 n.9 (1982).  Therefore, "the dismissal of a complaint for lack of jurisdiction . . . adjudicate[s] the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims."  *Id.* (quoting *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980)).  Dismissals for lack of jurisdiction do not "preclude a party from later litigating the same claim, provided that the specific defect has been corrected."  *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 777 (N.D. Tex. 2008) ("Thus . . . dismissal under Rule 12(b)(2) does not prevent [Plaintiff] from filing the same claims *in another court where it appears that defendants are amenable to suit.*" (emphasis added)); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc.* § 4432, at 52 (2d ed. 2002) ("A judgment dismissing an action for want of personal jurisdiction, for example, may be clearly final and preclusive on the jurisdiction issue, but it is not on the merits for purposes of claim preclusion.").  However, such a dismissal precludes "relitigation of the specific issue of jurisdiction, venue, or joinder already resolved."  *Baris*, 74 F.3d at 571.

### b.  Personal Jurisdiction

Federal Circuit law governs issues related to personal jurisdiction in declaratory judgment patent cases.  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)).  There are two types of personal jurisdiction—general and specific.  Foreign corporations are subject to general jurisdiction only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 914, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see also Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct.

6

746, 754 (2014).  When general jurisdiction does not exist, a court may exercise specific

jurisdiction over a defendant only "if the cause of action 'arises out of' or 'relates to' the

defendant's in-state activity."  *Breckenridge Pharm., Inc. v. Metabolite Labs, Inc*., 444 F.3d

1356, 1360–61 (Fed. Cir. 2006); *see also Daimler*, 134 S. Ct. at 754.  To determine if specific

jurisdiction exists, a court must inquire whether a defendant has purposefully directed its

activities at the forum and, if so, whether the litigation results from alleged injuries that arise out

of or relate to those activities.  *Breckenridge Pharm., Inc*., 444 F.3d at 1363.  If the Court finds

these elements present, then the burden of proof shifts to the defendant, which, to support a

finding against jurisdiction, must "present a compelling case that the presence of some other

considerations would render jurisdiction unreasonable."  *Id.*

In patent cases seeking a declaratory judgment, the harm alleged is the "wrongful

restraint [by the patentee] of the free exploitation of non-infringing goods."  *Avocent Huntsville*

*Corp.*, 552 F.3d at 1332.  To determine whether a patent holder is subject to specific jurisdiction

in the forum where the declaratory judgment suit is brought, courts examine whether the patent

holder "purposefully directed" its activities related to the enforcement or defense of the patent,

and, if so, the extent to which the action "arises out of or relates to" such enforcement or defense.

*Avocent Huntsville Corp.*, 552 F.3d at 1332; *see generally Radio Sys. Corp. v. Accession, Inc.*,

638 F.3d 785, 790 (Fed. Cir. 2011).

### c.  Standing

A federal court lacks subject matter jurisdiction to hear a case if the plaintiff lacks

standing to bring his claim.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The party invoking

federal jurisdiction bears the burden of establishing standing.  *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 561 (1992).  Standing is determined at the commencement of suit.  *Id.* at 570 n.5.

Jurisdiction under the Declaratory Judgment Act requires an "actual controversy."  28

U.S.C. § 2201(a).  Because of this "actual controversy" requirement, a court may not adjudicate

"a difference or dispute of a hypothetical or abstract character" or "one that is academic or

moot."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).  The declaratory judgment

plaintiff bears the burden of proving that there is an actual controversy.  *See Fina Research, S.A.*

*v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998).  Even if there is an actual controversy and

thus jurisdiction, the exercise of that jurisdiction rests within the sound discretion of the district

court.  *See, e.g.*, *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).

## 4.  DISCUSSION

### a.  FGTL'S First Motion To Dismiss

In its First Motion to Dismiss, FGTL moved to dismiss under Rules 12(b)(2), (3), and (6),

claiming that (1) res judicata bars NWI and NAP from relitigating the Court's determination in

the 2015 Action that it lacks personal jurisdiction over FGTL; (2) this is a duplicative suit; (3)

the Court does not have personal jurisdiction over FGTL; and (4) venue is improper.  ECF No.

12 at 17–23.  FGTL further argues that sanctions are warranted because the Plaintiffs

unnecessarily and improperly multiplied the proceedings by filing this case after the Court

dismissed the 2015 Action.  After FGTL's First Motion to Dismiss was filed, Plaintiffs filed the

First Amended Complaint, naming FMC as an additional Defendant and adding three additional

patents: the '801 patent, the '658 patent, and the '785 patent.  Plaintiffs then responded to the

First Motion to Dismiss, arguing that it should be denied as moot in light of the Amended

Complaint, and making its own request for sanctions against FGTL.

After FGTL and FMC filed their Second Motion to Dismiss, the parties filed Notices of

Position as to whether the Court needed to make determinations on both pending Motions to

Dismiss.  Plaintiffs ask the Court to deny the First Motion to Dismiss and Motion for Sanctions as moot in light of the Amended Complaint.  ECF No. 64 at 1.  In their Notice, Defendants appears to state that determination of both Motions to Dismiss is not necessary, stating the Court "need only address dismissal of the five [declaratory judgment] claims against FGTL once as a practical matter."  ECF No. 63 at 3.  Defendants suggest numerous actions that the Court may take, including dismissing the case against FGTL on the original two patents subject to the First Motion to Dismiss and the remaining three on the Second Motion to Dismiss, or deciding only the sanctions portion of the First Motion to Dismiss, which Defendants claim was not mooted by the Amended Complaint, and rule in regard to the Plaintiffs' five declaratory judgment claims on the Second Motion to Dismiss.  *Id.*

It is a generally accepted principle that the filing of an amended complaint supersedes the prior complaint.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  A motion to dismiss that attacks the superseded complaint may be denied as moot.  *See, e.g.*, *Mangum v. United Parcel Servs.*, No. 3:09–CV–0385–D, 2009 WL 2700217, at *1 (N.D. Tex. Aug. 26, 2009).  However, a motion to dismiss that attacks the original complaint for deficiencies that persist in the amended complaint should not necessarily always be denied as moot.  Rather, the court has the discretion to apply the original motion to dismiss to the amended complaint.  *E.g.*, *Davis v. Baylor Regional Med. Ctr. at Grapevine*, No. 3:11-cv-1350, 2013 WL 866173, at *1 (N.D. Tex. Mar. 8, 2013) ("If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading." (quoting Charles Alan Wright et al., Fed. Prac. & Proc. § 1476 (2010)).

Here, the Second Motion to Dismiss restates the Defendants' arguments concerning lack of personal jurisdiction, res judicata, and improper venue as were asserted in the First Motion to

Dismiss, at times incorporating arguments by reference to the First Motion to Dismiss.  The Second Motion to Dismiss also urges new arguments concerning lack of personal and subject matter jurisdiction as to FMC.  The arguments made in the First Motion to Dismiss seem to be either expressly urged in the Second Motion to Dismiss or incorporated by reference.

Concerning sanctions, the Second Motion to Dismiss incorporates by reference from the First Motion to Dismiss FGTL's Motion for Sanctions, arguing that the sanctions request in the First Motion was not mooted by Plaintiffs' Amended Complaint.  Defs.' 2d Mot. at 30.  In their Notice to the Court on whether both Motions to Dismiss need to be decided, Plaintiffs argue that Defendants' Motion for Sanctions was specifically directed towards the original, now-superseded Complaint, and therefore it should be denied as moot, because the original Complaint has no current legal effect.  ECF No. 64 at 4.  The Court disagrees.  Defendants' Motion for Sanctions alleged that Plaintiffs unnecessarily multiplied and extended litigation by refiling the identical declaratory judgment claims on the '299 and '685 patents that were previously dismissed, a concern that applies with equal force to the Amended Complaint, which asserts the same declaratory judgment claims as did the original Complaint.  Defendants' renewal of their request for sanctions in the Second Motion to Dismiss sufficiently demonstrates that "some of the defects raised in the original motion remain in the new pleading," such that the Court may consider those incorporated arguments as being applied to the Amended Complaint.  *See Davis*, 2013 WL 866173, at *1.

The Court concludes, therefore, that in light of the Amended Complaint and the Second Motion to Dismiss, the First Motion to Dismiss should be **DENIED** as moot, except to the extent that positions taken in the First Motion to Dismiss, including the request for sanctions, are incorporated by reference into the Second Motion to Dismiss.

10

### b. FGTL and FMC'S Second Motion to Dismiss

In the Second Motion to Dismiss, FGTL and FMC move to dismiss under Rules 12(b)(1), (2), (3), and (6), and Rule 19(b), claiming that (1) res judicata bars the Plaintiffs from relitigating the Court's determination in the 2015 Action that they lacked personal jurisdiction over FGTL; (2) the Court lacks subject matter jurisdiction over FMC; (3) the Court does not have personal jurisdiction over FMC or FGTL; (4) the Plaintiffs lack standing to bring a declaratory judgment action against FMC; (5) FGTL is an indispensable party; (6) the Court can discretionarily decline jurisdiction in this declaratory judgment action; and (7) venue is improper.  Defs.' 2d Mot. at 16–30.  FGTL further argues that sanctions are warranted because the Plaintiffs unnecessarily and improperly multiplied the proceedings by filing this case after the Court dismissed the 2015 Action.  Plaintiffs ask that if the Court finds the evidence of personal jurisdiction over FGTL and FMC to be insufficient, it should allow jurisdictional discovery of FGTL's and FMC's contacts with Texas.

### i. Res Judicata Requires Dismissal of FGTL

Defendants argue that res judicata prevents the Plaintiffs from disputing that this Court lacks personal jurisdiction over FGTL.  Defs.' 2d Mot. at 17.  The Court agrees.  The conditions for res judicata as to the jurisdictional dispute are satisfied: the parties to both this and the earlier actions are identical, namely NWI, NAP, and FGTL; the Court that rendered the earlier judgment was competent; res judicata may be applied to the Court's determination that personal jurisdiction was lacking; and Plaintiffs brought declaratory judgment claims in the 2015 Action that involved the same "common nucleus of operative facts" as those claimed in this action, namely patent enforcement actions by FGTL and LKQ.  *See Comer*, 718 F.3d at 469; *Procter & Gamble Co.*, 379 F.3d at 499; *New World Int'l, Inc. v.*, No. 3:15-cv-01121, 2016 WL 1069675, at

*1 (N.D. Tex. Mar. 16, 2016) (Lynn, J.).

Specifically, the Amended Complaint alleges that general jurisdiction over FGTL exists in Texas "because FGTL is essentially a patent holding company for Ford, and due to the parent-subsidiary relationship between Ford and FGTL, the imposition of general personal jurisdiction over FGTL is reasonable and fair due to the general personal jurisdiction over Ford."  Am. Compl. ¶ 9.  However, in the 2015 Action, this Court considered whether general jurisdiction existed over FGTL in Texas, and concluded that it did not.  General jurisdiction confers personal jurisdiction "even when the cause of action has no relationship to those contacts," *Grober v. Mako Prods.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012), and thus the Court concludes that the fact that three additional patents were asserted in the Amended Complaint and that FMC was added as a defendant makes no difference as to whether general jurisdiction over FGTL exists.  In the 2015 Action, NWI and NAP made numerous arguments for general jurisdiction,[1] but notably made no arguments regarding FMC's contacts with Texas, which NWI and NAP now assert. *New World Int'l, Inc.*, 2016 WL 1069675, at *3 n.1.  Res judicata prohibits NWI and NAP from arguing that FMC's contacts with Texas confer general jurisdiction, as those arguments could have been made in the earlier action.  *See Liberto*, 441 F.3d at 327 n.28 (noting that when res judicata applies, it "prohibits either party from raising any claim . . . in the later action that was or could have been raised . . . in the prior action").

Furthermore, NWI and NAP are precluded from arguing that there is specific jurisdiction

---

[1] NWI and NAP argued that general jurisdiction exists over FGTL for four reasons: first, vehicles and parts covered by FGTL's design patents are continuously and systematically sold in Texas; second, Ford's website says that FGTL has technology and intellectual property available for licensing and sale throughout the United States; third, FGTL entered into an "alliance" with a Texas company to develop technology; and finally, FGTL's licensee, LKQ, operates in Texas. *New World Int'l, Inc.*, 2016 WL 1069675, at *3.  The Court concluded that these contacts were insufficient to establish general jurisdiction in Texas for FGTL under the analysis of *Daimler. Id.*

in Texas over FGTL.  The Amended Complaint alleges there is specific personal jurisdiction

over FGTL because it has threatened to sue NWI and NAP for design patent infringement, FGTL

has entered into an exclusive license agreement with LKQ that covers the patents in suit, and that

FGTL and LKQ, as FGTL's licensee, have engaged in patent enforcement and protection efforts

in and directed towards Texas.  Am. Compl. ¶ 7.  Plaintiffs made virtually the same allegations

in support of specific personal jurisdiction in the 2015 Action:

> NWI and NAP . . . claim that this Court has specific jurisdiction over FGTL
> because it sent cease and desist letters to them in Texas, LKQ does business in
> Texas, and LKQ has assisted FGTL in its efforts to enforce the patents at issue.

*New World Int'l, Inc. v. Ford Global Techs., LLC*, 2016 WL 1069675, at *4 (N.D. Tex. Mar. 16,

2016).

The Court in the 2015 Action found that NWI and NAP failed to demonstrate that FGTL

purposefully directed enforcement activities at Texas, and thereby concluded that "NWI and

NAP [had] not made out a prima facie case supporting a finding of specific jurisdiction over

FGTL."  *Id.* at *7.  Because NWI and NAP rely on the same "common nucleus of operative

facts" in both this and the earlier 2015 Action in making their claim for specific jurisdiction—

namely the patent licensing relationship between FGTL and LKQ—the Court concludes that

NWI and NAP are attempting to relitigate the issue of specific jurisdiction over FGTL on the

basis of its licensing agreements with LKQ.  Res judicata prohibits such duplicative litigation,

and NWI and NAP's claims against FGTL are, therefore, barred.

NWI and NAP claim that the Amended Complaint contains "additional acts of

extrajudicial enforcement" not present in the 2015 Action or the original Complaint in this case.

Pls.' Resp. [ECF No. 53] at 14.  These "additional acts" consist of allegations that LKQ

contacted NWI's suppliers and urged them not to supply patented parts to NWI and NAP;

conversations between the LKQ executives and the Vice President of NWI concerning settlement

and attempts to resolve the pending litigation;[2] and LKQ's alleged refusal to sell patented parts to NWI and NAP.  Am. Compl. ¶¶ 49, 50, 51, 54, 55.

The Court can disregard these "additional acts" for several reasons.  Firstly, NWI and NAP have not alleged any changed circumstances or recent discoveries that explain their failure to include these alleged jurisdictional facts in the 2015 Action, and therefore, they are estopped from relitigating the issue of personal jurisdiction based on facts that were available in the 2015 Action.  *See Deckert v. First Wachovia Student Fin. Servs., Inc.*, 1991 WL 346395 (N.D. Tex. June 13, 1991), *aff'd*, 963 F.2d 816 (5th Cir. 1992) ("[P]laintiff is barred from litigating any issues . . . which, with the use of diligence, might have been tried in the prior suit."); *cf. Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000) ("In cases where a party seeks to amend her complaint after entry of judgment, [the Fifth Circuit has] consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling.").  Secondly, it is unlikely these additional allegations of extrajudicial enforcement would have been sufficient to alter the Court's decision in the 2015 Action finding no personal jurisdiction over FGTL.  The Federal Circuit has indicated that communications seeking to end a dispute through settlement or a licensing provision are insufficient to give rise to personal jurisdiction.  *See Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 791 (Fed. Cir. 2011); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("Although the Rules [of Evidence] do

---

[2] Specifically, the Amended Complaint alleges that LKQ executives called NWI's Vice President in connection with the pending lawsuit and said that "FGTL had a huge litigation budget and the lawsuit would be extremely expensive for New World," and "that as long as [NWI] dropped the lawsuit and stopped selling the Ford items, that's all that FGTL wanted."  Am. Compl. ¶ 50.  The Amended Complaint also describes another telephone conversation in which LKQ executives "explained that LKQ was the exclusive licensed aftermarket distributor for FGTL parts and asked if New World would be willing to drop its lawsuit if LKQ were willing to sell to New World."  *Id.* ¶ 51.  It also alleges that an "officer of LKQ also has contacted an officer of New World to inquire whether LKQ can purchase New World."  *Id.* ¶ 54.

not explicitly make evidence of such negotiations inadmissible to establish personal jurisdiction, the policy underlying the Rules supports an approach that fosters settlement of infringement claims.").  Furthermore, the Amended Complaint does not allege which suppliers LKQ allegedly contacted to prevent supply of patented parts to NWI, whether the alleged communications were specifically directed towards Texas and succeeded in disrupting NWI's business relationships with the suppliers, or whether FGTL directed or acted in concert with LKQ's alleged communications to NWI's suppliers, other than the bare allegation that the communication was "done in cooperation with FGTL."  Am. Compl. ¶ 49.

For the foregoing reasons, the Court concludes that personal jurisdiction over FGTL is lacking and, in light of the earlier decision in the 2015 Action, NWI and NAP are barred from contesting the lack of personal jurisdiction over FGTL.[3]

## ii.  The Court Lacks Subject Matter Jurisdiction Over FMC

The question that remains is whether NWI and NAP's claims against FMC can proceed without FGTL.  Defendants argue that FGTL is an indispensable party under Federal Rule of Civil Procedure 19, and because the Court lacks personal jurisdiction over FGTL, the entire case must be dismissed.  Alternatively, Defendants argue that NWI and NAP lack standing to assert a declaratory judgment claim against FMC, that the Court lacks personal and subject matter

---

[3] The Court makes this decision despite NWI and NAP's appeal of the 2015 Action currently pending before the Federal Circuit.  *See New World Int'l, Inc. v. Ford Global Techs., LLC*, No. 16-2097 (Fed. Cir. Apr. 14, 2016).  Both Federal and Fifth Circuit law state that res judicata applies even if the earlier judgment is on appeal.  *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1380–81 (Fed. Cir. 1999); *Praer v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969).  This appears to be the case even when the order being appealed is not a "final judgment," as in this case.  "[T]he law is well settled that the pendency of an appeal has no effect on the finality or *binding effect of a trial court's holding*."  *Pharmacia & Upjohn Co*., 170 F.3d at 1381 (emphasis added) (citing *Deposit Bank v. Board of Councilmen of City of Frankfort*, 191 U.S. 499 (1903)).  Furthermore, in the event the Federal Circuit reverses the Court's finding of no personal jurisdiction over FGTL in this 2015 Action, dismissing FGTL from this case on res judicata grounds would not impact the Plaintiffs' ability to continue to litigate their claims in the 2015 Action.

jurisdiction over FMC, that venue is improper, and that the Court should decline to exercise declaratory judgment jurisdiction over FMC.  Without reaching Defendants' other arguments, the Court concludes that NWI and NAP lack standing to bring this declaratory judgment action solely against FMC, and accordingly, the Court lacks subject matter jurisdiction.

Only a patent owner or an exclusive licensee has constitutional standing to bring an infringement suit.  *Sicom Sys., Ltd. v. Agilent Techs., Inc*., 427 F.3d 971, 976 (Fed. Cir. 2005).  A parent corporation does not hold rights associated with patents owned by a subsidiary.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary."); *DePuy, Inc. v. Zimmer Holdings, Inc*., 384 F. Supp. 2d 1237, 1238–40 (N.D. Ill. 2005) (dismissing a patent infringement suit brought by the corporate parent of the patentee, holding it was an "entity that does not own the property right that it is suing to enforce").  Accordingly, a parent corporation generally has no standing to bring an infringement suit for a patent that its subsidiary owns.  *See GMP Techs., LLC v. Zicam, LLC*, 2009 WL 5064762, at *2 (N.D. Ill. Dec. 9, 2009); *DePuy*, 384 F. Supp. 2d at 1238 (holding that a corporation did not have standing to sue for patent infringement simply because the patentee was the corporation's wholly owned subsidiary); *see also GPS Indus., Inc. v. Altex Corp*., No. 07-CV-0831-K, 2009 WL 2337921, at *2 (N.D. Tex. July 27, 2009).

A patent owner may license all its substantial rights in patents, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on that licensee.  *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1358–59 (Fed. Cir. 2010). However, a licensee under a nonexclusive licensing agreement has no right to sue for patent infringement.  *Id.* at 1360 (citing *Propat Int'l Corp. v.*

*RPost, Inc.*, 473 F.3d 1187, 1193–94 (Fed. Cir. 2007)).  When there is an exclusive license

agreement, but the exclusive license does not transfer sufficient rights to make the licensee the

equivalent of the patent owner, either the licensee or the licensor may sue, but both of them

generally must be joined as parties to the litigation.  *Id.* (citing *Aspex Eyewear, Inc. v. Miracle

Optics, Inc*., 434 F.3d 1336, 1344 (2006)).

"[A] declaratory judgment action alleging that a patent is invalid and not infringed [is]

the mirror image of a suit for patent infringement."  *VE Holding Corp. v. Johnson Gas Appliance

Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990).  Accordingly, a party that lacks standing to bring an

infringement suit is not a proper defendant to a declaratory judgment action for noninfringement.

*See Fina Research, S.A. v. Baroid Ltd*., 141 F.3d 1479, 1481 (Fed. Cir. 1998); *GMP Techs., LLC*,

2009 WL 5064762, at *2.

As the parties invoking the Court's declaratory jurisdiction, NWI and NAP bear the

burden to establish that jurisdiction existed at the time the claim for declaratory relief was filed,

and that it has continued since.  *Steffell v. Thompson*, 415 U.S. 452, 459 n.10 (1974).  Here,

FGTL owned four of the five patents-in-suit at the time the Amended Complaint was filed.  App.

to 2d Mot. at 78–83; *see Sealant Sys. Intern., Inc. v. TEK Global, S.R.L.*, 616 Fed. App'x 987,

990 (Fed. Cir. 2015) ("[T]he relevant standing inquiry focuses on the time at which a given claim

is asserted . . . .").  The '785 patent was owned by FMC at the time the Amended Complaint was

filed, but was wholly assigned to FGTL shortly thereafter.  App. to 2d Mot. at 78.  FGTL is a

wholly owned subsidiary of FMC.  Porcari Decl. ¶ 2, App. to 2d Mot. at 86.  Accordingly, when

the Amended Complaint was filed, FMC would have lacked standing to bring an infringement

suit for four of the patents-in-suit, and therefore FMC was not, and is not, the proper defendant to

a declaratory noninfringement action concerning the '299, '658, '685 and '801 patents.

17

Furthermore, although FMC, along with LKQ, is a licensee of FGTL, Plaintiffs have not argued that FGTL's license with FMC is exclusive or transfers sufficient rights to make FMC a putative patent owner with standing to bring a patent infringement suit.

Instead, NWI and NAP argue that NWI and NAP had standing against FMC when the suit was initially filed, due to FMC's then-ownership of the '785 patent.  Pls.' Resp. [ECF No. 53] at 26; App. to 2d Mot. at 78.  "The question," NWI and NAP assert, is "whether this Court lost subject matter jurisdiction over [FMC] when the '785 [p]atent was assigned."  Pls.' Resp. at 26.  NWI and NAP maintain that, after assignment of the '785 patent from FMC to FGTL, "the case became moot as to [FMC] and FGTL became the successor in interest to the '785 [p]atent." *Id.*

The Court determined in the 2015 Action that personal jurisdiction over FGTL is lacking. The Court further concludes that that action is preclusive to Plaintiffs' jurisdictional claims here, and that in FGTL's absence, the Court lacks subject matter jurisdiction in this case.  NWI and NAP are correct that their case against FMC became moot after it assigned the '785 patent to FGTL.  *Cf. Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("Thus, when Schreiber transferred the '860 patent and became a mere non-exclusive licensee, Schreiber lost standing to sue for infringement and the case became moot.").  Mootness is a threshold subject matter jurisdiction issue, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998), and is an exception to "the long-standing rule in the Federal courts that jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events, including action by the parties."  *F. Alderete Gen. Contractors, Inc. v. United States*, 715 F.2d 1476, 1480 (Fed. Cir. 1983).  Thus, although NWI and NAP may have had declaratory judgment standing against FMC on account of FMC's ownership of the '785 patent

when suit was filed, their case against FMC became moot after FMC assigned the '785 patent to FGTL.

NWI and NAP argue that "[s]ince [NWI] had standing to sue [FMC] when suit was filed and FGTL is [FMC's] successor in interest regarding the '785 [p]atent, if personal jurisdiction existed over Ford, then personal jurisdiction exists over FGTL." Pls.' Resp. at 28. Even if this were true, the Court has already determined that NWI and NAP are barred by res judicata from contesting personal jurisdiction over FGTL. Further, although Plaintiffs' argument could support a finding of personal jurisdiction over FGTL, it provides no basis for finding that jurisdiction exists over FMC in FGTL's absence.

Plaintiffs assert no other arguments in support of the Court's jurisdiction over FMC. The Court, therefore, holds that subject matter jurisdiction is lacking in this declaratory judgment action against FMC. Any standing against FMC that NWI and NAP had on account of the '785 patent was lost when the patent was assigned to FGTL and the case mooted. The Court may not adjudicate a dispute that "is academic or moot," and therefore, the Court determines that it lacks subject matter jurisdiction. *Aetna Life Ins. Co.*, 300 U.S. at 240.

### c. Motion for Jurisdictional Discovery

NWI and NAP alternatively seek jurisdictional discovery of extrajudicial coordinated enforcement efforts by FGTL, LKQ, and FMC, and the full extent of FMC's continuous and systematic affiliations with Texas. ECF No. 59 at 2. The Motion is **DENIED**. As discussed, NWI and NAP cannot collaterally attack the Court's judgment dismissing FGTL for lack of personal jurisdiction, and thus jurisdictional discovery as to FGTL's contacts will have no effect on the Court's finding of no personal jurisdiction. Furthermore, the jurisdictional discovery requested as to FMC will have no impact on the Court's judgment that subject matter jurisdiction

is lacking.

## 5.  SANCTIONS

Defendants move for sanctions in both the First and Second Motion to Dismiss on the grounds that NWI and NAP frivolously multiplied this proceedings by filing this second lawsuit after the Court dismissed the 2015 Action for want of personal jurisdiction.  Plaintiffs NWI and NAP and their counsel, Robert G. Oake, Jr., are **ORDERED** to appear before Judge Barbara M. G. Lynn on April 17, 2017, at 9:00 A.M., in Courtroom 1570, 1100 Commerce Street, Dallas, Texas, to show cause why sanctions should not be imposed against them for violating 28 U.S.C. § 1927 and/or Federal Rule of Civil Procedure 11(b).

## 6.  CONCLUSION

Because the Court lacks personal jurisdiction over FGTL and lacks subject matter jurisdiction over FMC, it need not reach Defendants' arguments that the case should be dismissed as a duplicative suit, for improper venue, for ineffective service, and for failure to join an indispensable party under Rule 19(b).  Defendants' First Motion to Dismiss [ECF No. 11] is **DENIED** as moot, except with respect to arguments incorporated by reference in the Second Motion to Dismiss, Defendants' Second Motion to Dismiss [ECF No. 47] is **GRANTED,** and Plaintiffs' Motion for Jurisdictional Discovery [ECF No. 59] is **DENIED**.

**SO ORDERED.**

March 22, 2017.

BARBARA M. G. LYNN
CHIEF JUDGE